IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK LAW | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. _____ |
| v. | § | |
| | § | |
| DON VANCE FORD, INC. | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Mark Law, files this Original Complaint (the "Complaint") against Defendant Don Vance Ford, Inc. ("DVF" or "Defendant" or "Seller") and in support thereof, Plaintiff states as follows:

### PARTIES

1. Plaintiff Mark Law ("Law" or "Plaintiff" or "Buyer"), is an individual domiciled in Texas and residing at 4 Miterton Ct, Mansfield, Tarrant County, Texas 76063.

2. Defendant Don Vance Ford, Inc. is a Missouri corporation with its principal place of business at 14897 State Highway 38, Marshfield, Missouri 65706. DVF is therefore a citizen of Missouri. Don Vance Ford Inc. may be served with process by serving its registered agent, Vickey L. Vance at 285 Hwy W, Marshfield, Missouri 65706.

### JURISDICTION AND VENUE

3. Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of jurisdiction as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. In fact, the personal property 2023 F-150 King Ranch (the "Truck") at issue in this lawsuit that was fraudulently sold by DVF is valued at approximately $80,000. *See* Exhibit A.

4.      This Court has personal jurisdiction over DVF because DVF performed acts that constitute doing business in Texas including, but not limited to, advertising goods and services in Texas, communicating with buyers in Texas, negotiating and entering into a contract in Texas that was performable in whole or in part in Texas, committing a tort in whole or in part in Texas and/or otherwise purposefully availing themselves of the benefits and protections of Texas law.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Law's claims occurred in this judicial district and the property at issue (Truck) is situated in this district. More specifically, DVF: advertised the Truck to Law in Tarrant County, Texas; had numerous communications with Law in Tarrant County, Texas; made numerous promises, representations and assurances to Law in Tarrant County, Texas; negotiated the sale of the Truck and related terms with Law in Tarrant County, Texas; applied for and received financing from Tarrant County, Texas; executed the underlying contractual and loan documents with Law in Tarrant County, Texas; shipped the Truck and performed delivery to Law in Tarrant County, Texas. In fact, Law has never been outside Tarrant County, Texas for any conduct relevant to this dispute. The Truck remains located in Tarrant County, Texas.

**FACTUAL BACKGROUND**

6.      Law resides in Tarrant County, Texas and, in October 2024, was seeking to purchase a new automobile. While searching for potential vehicles, Law found an advertisement from DVF. DVF placed an online advertisement through Auto Trader for a 2023 F-150 King Ranch. Law was searching for several weeks for a vehicle that was essentially brand new and had specific options and accessories. Law had engaged in correspondence and negotiations with other sellers prior to DVF. Upon reaching out to DVF regarding the online advertisement stating the Truck as a demo, had not been titled, and was effectively new, Law received a telephone call

from DVF sales consultant Gary Skelton ("Skelton"). Law and Skelton discussed the Truck and Skelton answered questions and provided additional information to Law about the Truck.

7. Importantly, Law and Skelton specifically discussed on October 7, 2024 via telephone conference how the Truck was basically new and was never titled but driven by the dealership principle, Don Vance, as a demo.[1] On behalf of DVF, Skelton made material representations to Law that the demo vehicle was like new, having only 2,835 miles on it and that it had no issues or prior service history. DVF then sent Law a SMS text message and most of the subsequent correspondence sans a few additional telephone calls came through texts. Skelton did not disclose that the Truck had been entirely and poorly repainted down the entire passenger side. Instead, Skelton misrepresented the Truck's history and condition. Skelton represented and assured that the Truck was a like-new demo with no damage. In fact, DVF's online advertisement further represented the Truck's condition as entirely clean via CarFax report. However, such report would not show the Truck's actual condition and repairs if the paint work done was intentionally not reported, which, upon information and belief, occurred at DVF's direction.

8. Based upon DVF's representations and assurances, both express and implied, and the lack of material disclosure, Law's reasonably relied on the information provided and decided to purchase the Truck from DVF. Law believed DVF's price was a little high based on comparables located during his research and, therefore, Law presented an offer. DVF rejected Law's initial offer but presented a counteroffer. The parties continued negotiations and finally agreed upon terms and a total price to include the Truck with options and accessories. All of the communications and negotiations occurred with Law in Tarrant County, Texas.

---

[1] Upon information and belief, Law anticipates needing to join and assert claims against Don Vance and potentially Don Vance Auto Group. Law intends to conduct discovery to ensure such potential parties should be added.

9. Upon reaching an agreement, Law applied for financing through DVF and communicated with DVF's Finance Manager, Amy Gregoire ("Gregoire"). Before finalizing the deal, Law again inquired with Skelton as to the vehicle's condition and confirmed it was like-new as represented. Specifically, Law inquired about the condition of the interior. Skelton stated that "Don was not a smoker" referring to previous conversations regarding the like-new demo that Don only had driven. Again, based upon the representations discussed herein and lack of disclosure, Law proceeded with the Truck purchase.

10. The Truck was shipped via Smith Auto Transport to Law's home in Mansfield, Tarrant County, Texas. When the Truck was delivered to Law, it first appeared to Law's novice eye to be good shape as represented. However, Law immediately noticed the driver's side seat loudly lurched/creaked when he sat in it. Law took the Truck to the nearby Ford dealership, Don Davis Ford – which has recently been renamed to Clay Cooley Ford, in Arlington, Texas to have the seat repaired under warranty. Law met with Alec Raetz ("Raetz") from the service department on October 22, 2024 at 10:00am and discussed the seat repair. A repair appointment was made for November 4, 2024.

11. Shockingly, during the initial service appointment with Raetz on October 22, 2024, Raetz pointed out to Law that the entire right side of the vehicle had been painted after market. Raetz informed Law that Raetz had substantial body-work experience and could readily tell the Truck had been repainted. Raetz proceeded to point out all of the "fish-eyes" in the paint job and also over-spray signs. Raetz also highlighted badging issues on the front right fender. Law was stunned and immediately contacted DVF.

12. Law called and sent a text message to Skelton as he had no idea any repairs had been made to the Truck. Skelton sounded caught off guard and surprised to hear from Law; as if

he was caught. Skelton offered only a very limited and anxious response of "uh…uh…you need to speak to my General Manager." Law then asked to be transferred to the DVF General Manger, Michael Barker ("Barker"). Tellingly, Barker immediately offered to pay to "wet sand and buff" but wanted Law to get an estimate. It struck Law as odd how Barker immediately offered such a remedy as the Truck was supposed to be an "almost new demo" and represented as such with no disclosure of paint or body work. Law proceeded to get repair estimates as requested.

13. Law took the vehicle straight from Clay Cooley to Collision Champions located in Mansfield, Tarrant County, Texas. There, Law spoke directly to General Manager Daryl Robinson ("Robinson"). Robinson performed an extensive visual inspection of the vehicle based on his extensive professional knowledge and experience. Robinson confirmed the Raetz's findings. Specifically, Robinson found (1) the right fender has a prior repair around the emblem; (2) the right fender, both doors and bedside panels are full of deep fish-eyes (paint contamination); (3) right bedside, around the taillight has been reworked and taillight does not fit flush; and (4) overspray appears on the inside of the tailgate. Robinson prepared a repair estimate, a true and correct copy of which is attached as <u>Exhibit B</u>. Law also got a consistent written estimate from Raetz, a true and correct copy of which is attached as <u>Exhibit C</u>. Notwithstanding, Law made it known to Barker that he wanted to immediately rescind the entire transaction, return the Truck and receive a full refund.

14. Law sent the estimates to Barker and followed up with a phone call to Barker. During the telephone call, Barker loudly and rudely exclaimed "I thought we agreed on a wet sand and buff" to which Law responded that all he did was take the Truck to repair experts for an estimate and both estimates were similar as to the existing issues and repair costs. Barker

arrogantly responded that DVF refused to rescind the transaction or pay for any repairs. Rather, Barker doubled down on the fraudulent conduct and told Law, "You do what you have to do." Law brings this lawsuit to do exactly that.

## CAUSES OF ACTION

I.  **DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**

15. Law expressly incorporates for all purposes and realleges all of the facts and allegations set forth in paragraphs 1-14 herein as if fully copied and set forth at length herein.

16. Plaintiff is a consumer entitled to bring this action for relief under the Texas Deceptive Trade Practices – Consumer Protection Act (the "DTPA"). The actions of Defendant outlined above constitute misrepresentations, fraud and unconscionable conduct, actionable under the DTPA.

17. Specifically, Defendant committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

   A. False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas Deceptive Trade Practices – Consumer Protection Act.

   B. Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices – Consumer Protection Act.

   C. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices – Consumer Protection Act.

  D. Representing that products and/or services have been performed which the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices – Consumer Protection Act.

  E. Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices – Consumer Protection Act.

  F. Committing an unconscionable action in violation of § 17.46(b)(3) of the Texas Deceptive Trade Practices – Consumer Protection Act.

  18. Further, Defendant violated the DTPA by engaging in unconscionable conduct and/or an unconscionable course of conduct. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

  19. Defendant's conduct as described herein was a producing cause of damages to Plaintiff. Further, Defendant's conduct was committed knowingly, entitling Plaintiff to seek the trebling of its actual damages in accordance with the DTPA.

## II. NEGLIGENT & GROSSLY NEGLIGENT MISREPRESENTATION

  20. Law expressly incorporates for all purposes and realleges all of the facts and allegations set forth in paragraphs 1-19 herein as if fully copied and set forth at length herein.

  21. Law further alleges that the actions of DVF constitute grossly negligent misrepresentations because there were grossly false representations of existing facts and Law was damaged by these representations. In particular, DVF willfully and intentionally represented that the Truck was a like-new demo vehicle with no prior issues or repairs. Further, since DVF

was actuated by malicious motives or shared the unlawful motives of yet unknown parties. All of Plaintiff's damages result out of the fraud and grossly negligent misrepresentations of DVF.

### III.   FRAUD & FRAUDULENT INDUCEMENT

22.   Law expressly incorporates for all purposes and realleges all of the facts and allegations set forth in paragraphs 1-21 herein as if fully copied and set forth at length herein.

23.   In *Stone v. Lawyers Title Insurance Corporation,* 554 S.W.2d 183 (Tex. 1977), the Texas Supreme Court listed the following actionable fraud elements: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered injury. Here, as specifically detailed above and incorporated herein, (1) DVF made numerous material representations, including but not limited to, that the Truck was a like-new demo and had no damage or prior repair work; (2) as objectively and indisputably proven by numerous automotive experts and as demonstrated in Exhibits B and C, those representations were clearly false; (3) DVF's statements and intentional omissions were either false or made recklessly, (4) it was DVF's intent that Plaintiff rely on their statements and omissions in order to purchase the Truck and/or purchase the Truck at a significantly higher value than it would be if the prior paint and body work had been properly disclosed; (5) the Plaintiff did in fact rely on the statements and omission and overpaid for the Truck; and, (6) Plaintiff has suffered injury by DVF's material misrepresentations and intentional omissions. Plaintiff was induced into signing the contract documents by DVF's material misrepresentations and intentional omissions and entered into the sale contract with

DVF due to DVF's material misrepresentations and intentional omissions. All of Plaintiff's damages flowed out of the fraud of DVF's material misrepresentations and omissions.

### IV. FRAUD BY NONDISCLOSURE

24. Law expressly incorporates for all purposes and realleges all of the facts and allegations set forth in paragraphs 1-23 herein as if fully copied and set forth at length herein.

25. DVF concealed from or failed to disclose facts to Law about the Truck's condition, history, repairs and prior paint/body work. DVF had a duty to disclose those facts to Law because DVF was aware of the Truck's past and true condition and knew it was material to Law in deciding to purchase the Truck. DVF created a false impression by making intentional misrepresentations as set forth herein and no disclosure to Law. In discussing, and partially disclosing, the Truck's history and condition to Law, DVF had a duty to disclose the whole truth. The true and undisclosed facts were material in Law's decision to purchase the Truck from DVF. At the time, DVF knew that Law was ignorant of the true facts and did not have an equal opportunity to discover the truth. DVF was deliberately silent when it had a duty to speak. By failing to disclose the true facts to Law, DVF intended to (and did) induce Law to purchase the Truck and refrain from purchasing a vehicle elsewhere. Law relied on DVF's nondisclosure in purchasing the Truck. Law did not receive the benefit of the bargain and was injured in an amount within the jurisdictional limits of this Court as a result of acting without the knowledge of the undisclosed facts.

### V. AGENCY AND RESPONDEAT SUPERIOR

26. Whenever in this Petition it is alleged that DVF did any act or thing, it is meant that DVF or its agents, officers, servants, employees, and/or representatives did, performed, and/or participated in such act or thing. The actions and omissions giving rise to Law's claims were done on behalf of or under DVF control, with full authorization or ratification of DVF,

and/or done in the normal routine, course, and scope of agency or employment of DVF or its agents, officers, servants, employees, and/or representatives. At all material times, DVF or its agents, officers, servants, employees, and/or representatives had sole ownership, operation and control of the Truck and, therefore, any knowledge of any issues or repairs to the Truck is imputed to DVF.

## DAMAGES

### I. RESCISSION

27. Plaintiff realleges all of the allegations set forth in paragraphs 1-26 herein as if fully copied and set forth at length. Defendant's acts and omissions entitled Plaintiff to the remedy of rescission and Plaintiff pleads for same. Plaintiff is fully prepared to return the Truck and pleads to unwind the entire transaction and seek return of the full purchase amount plus all associated fees, interest, costs and additional damages.

### II. ECONOMIC DAMAGES

28. Plaintiff realleges all of the allegations set forth in paragraphs 1-27 herein as if fully copied and set forth at length. Defendant's acts and omissions as described herein have been a producing and/or proximate cause of damages to Plaintiff. Plaintiff has suffered economic damages, including but not limited to:

   A. Approximately $80,000.00 representing the value of the Truck;

   B. Approximately $500.00 shipping charges;

   C. Costs and expenses to repair and restore the Truck;

   D. Consequential damages due to the actions and omissions of DVF; and

   E. Additional actual damages due to the actions and omissions of DVF.

29. These damages are within the jurisdictional limits of this Court.

### III. KNOWING AND INTENTIONAL CONDUCT

30. Plaintiff realleges all of the allegations set forth in paragraphs 1-29 herein as if fully copied and set forth at length. Defendant had an actual awareness of the falsity, deception, or unfairness of the acts and practices alleged in this petition. Additionally, Defendant had the specific intent that Plaintiff act in detrimental reliance on the falsity and deception or in detrimental ignorance of the unfairness.

### IV. EXEMPLARY DAMAGES

31. Plaintiff realleges all of the allegations set forth in paragraphs 1-30 herein as if fully copied and set forth at length. Plaintiff further alleges that by reason of the fact that DVF knew that the representations and omissions described above were false at the time they were made and the actions were unlawful, the representations were willful and malicious and constitute conduct for which the law allows the imposition of exemplary damages. In particular, DVF willfully and intentionally misrepresented the Truck's history and condition. DVF's actions and conduct constitute the type of action that is so outrageous that it should be compensated for by additionally awarding punitive and/or exemplary damages. In this connection, Plaintiff will show that Plaintiff has incurred significant expenses, including attorney's fees and other damages, in the investigation and prosecution of this action. Accordingly, Plaintiff requests that exemplary damages be awarded DVF in a sum which exceeds the minimum jurisdictional limits of the Court.

### V. ADDITIONAL STATUTORY DAMAGES: EXEMPLARY DAMAGES

32. Plaintiff realleges all of the allegations set forth in paragraphs 1-31 herein as if fully copied and set forth at length. Plaintiff reserves the right to amend Plaintiff's pleadings to seek statutory damages and/or exemplary damages once discovery is conducted if the information discovered so warrants.

## ATTORNEY'S FEES

33. Plaintiff realleges all of the allegations set forth in paragraphs 1-32 herein as if fully copied and set forth at length. As a result of Defendant's conduct, Plaintiff has been required to obtain the services of the undersigned attorney for the filing, prosecution and trial of this cause, and therefore seeks an award of reasonable and necessary attorney's fees pursuant to applicable law and statute.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

34. Mr. Law seeks recovery of pre-judgment and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

## CONDITIONS PRECEDENT

35. All conditions precedent to Plaintiff's recovery have occurred or have been performed.

## PRAYER

36. Plaintiff, Mark Law, respectfully requests that Defendant Don Vance Ford Inc. be cited to appear and answer herein, and that, upon trial of this cause, the Court award Plaintiff judgment against Defendant as follows:

   A. Rescission of the Truck sale transaction;

   B. Actual and economic damages;

   C. Consequential damages;

   D. Treble damages as allowed by applicable law;

   E. Punitive damages as allowed by applicable law;

   F. Reasonable attorneys' fees for all proceedings herein through trial or hearing as appropriate, appeal and application for writ of error;

G. Prejudgment and post judgment interest at the maximum legal rates, respectively, as provided by law;

H. Statutory treble damages and/or exemplary damages in an amount set by the Court.

I. Costs of court; and

J. Such other and further relief, both general and special, at law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

By:   */s/ Kyle R. Watson*
Kyle R. Watson
State Bar No. 24047078
Fed ID No. 572417

**WINSTEAD PC**
24 Waterway Ave., Suite 500
The Woodlands, Texas 77380
(281) 681-5957
(281) 681-5901 – FAX
krwatson@winstead.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF MARK LAW**

OF COUNSEL:
WINSTEAD PC
Rusty Sewell
State Bar No. 24073590
Federal ID No. 2469184
24 Waterway Avenue, Suite 500
The Woodlands, Texas 77380
(281) 681-5900
(281) 681-5901– FAX
rsewell@winstead.com